UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAVID STEECE,<br><br>               Plaintiff,<br><br>     v.<br><br><br>CORRECTIONS CORPORATION OF AMERICA, Inc., a foreign corporation; CCA WESTERN PROPERTIES, INC., an Idaho corporation; PHILIP VALDEZ, individually and in his official capacity; JOHN and JANE DOES 1-8, in their individual and official capacities,<br><br>            Defendants. | Case No. 2:11-cv-00089-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Currently before the Court in this prisoner civil rights matter is Defendants'

Amended Motion To Dismiss. (Dkt. 14.) Plaintiff has responded to the Amended Motion

(Dkt. 16), Defendants have submitted a Reply (Dkt. 17), and the matter is now ripe.[1]

The Court finds that decisional process would not be aided by oral argument, and

it will resolve this matter after consideration of the parties' written briefing. D. Idaho L.

Civ. R. 7.1(d). For the reasons set forth below, Defendants' Amended Motion will be

---

[1] Plaintiff has responded to Defendants' proffered Amended Motion to Dismiss without objection, and the Court will grant Defendants' Motion for Leave to Amend (Dkt. 14). The original Motion to Dismiss (Dkt. 9) will be dismissed as moot, and the operative Motion is the Amended Motion.

**MEMORANDUM DECISION AND ORDER - 1**

granted in part and denied in part.

## BACKGROUND

At all relevant times, Plaintiff was incarcerated at the Idaho Correctional Center (ICC), which is a prison that is operated by the Corrections Corporation of America (CCA) under a contract with the state of Idaho. (Dkt. 1.)

Plaintiff alleges that ICC officials failed to protect him from two serious assaults by rival gang members in 2010. Plaintiff was first assaulted on March 10, 2010, while he was exercising in a recreation room. (*Id*. at ¶ 13.) Afterward, prison staff moved Plaintiff to a segregated housing unit on a different pod. (*Id*.) Plaintiff contends that correctional officers were aware that rival gang members also resided on the same pod, but they did not offer to transfer him to another housing area. (*Id*. at 14.)

On August 10, 2010, the door to Plaintiff's cell was apparently unlocked remotely in the central control room, and it popped open. (*Id*. at 14.) According to Plaintiff, numerous prisoners then rushed into his cell and begin beating him, causing him to go in and out of consciousness. (*Id*.) Correctional officers came into the cell and sprayed Plaintiff and the other combatants with mace. (*Id*.) Plaintiff later received a disciplinary offense report (DOR) based on allegations that he had engaged in mutual combat. (*Id*.)

Plaintiff contends that ICC staff contributed to or failed to prevent these assaults and that he suffered serious and permanent injuries. (*Id*.) He claims that the assaults were part of a larger pattern or practice of deliberate indifference to inmate safety at ICC. (*Id*. at ¶ 11, a-g.)

In his Complaint, Plaintiff alleges five causes of action: two counts of negligence under state law (for the failure to protect him from harm and the failure to provide adequate medical care); two counts of gross negligence/recklessness under state law, based on willful, wanton, or reckless conduct (for the failure to protect him from harm and the failure to provide adequate medical care); and one count arising under 42 U.S.C. § 1983, in which he alleges that prison officials "have enacted, pursued, acquiesced in, and/or implemented policies and practices" that violated his Eighth Amendment rights. (Dkt. 1, pp. 7-12.)

Defendants have filed a Amended Motion to Dismiss portions of the Complaint on the ground that Plaintiff failed to exhaust the prison's administrative review process as to certain claims before beginning this action. (Dkt. 14.) The matter is fully briefed, and the Court is now prepared to issue its ruling

## STANDARD OF LAW

**1.     The Exhaustion Requirement**

Because Plaintiff has raised one federal claim under 42 U.S.C. § 1983 and four related state law causes of action, Defendants' Motion to Dismiss implicates the exhaustion requirements of both state and federal law.

Specifically, the federal Prison Litigation Reform Act (PLRA) requires pre-complaint exhaustion of administrative remedies for all federal claims brought by state prisoners who challenge the conditions of their confinement: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law,

until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). This requirement is intended to give "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id*. at 204.

Under the PLRA, proper exhaustion is also required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

Likewise, Idaho law contains a similar requirement that prisoners must exhaust administrative remedies before proceeding with civil lawsuits:

> Unless a petitioner who is a prisoner establishes to the satisfaction of the court that he is in imminent danger of serious physical injury, no petition for writ of habeas corpus *or any other civil action* shall be brought by any person confined in a state or county institution, or in a state, local or private correctional facility, *with respect to conditions of confinement* until all available administrative remedies have been exhausted.

Idaho Code § 19-4206(1) (emphasis added). The Idaho Court of Appeals has interpreted this statutory provision as requiring exhaustion for all civil actions that are related to conditions of confinement, which includes tort claims. *Drennon v. Idaho State Corr. Inst*.,

181 P.3d 524, 526, 530 (Idaho Ct. App. 2007). Moreover, like the PLRA, the Idaho requirement mandates that the prisoner meet procedural deadlines to exhaust his administrative remedies properly. *Butters v. Valdez*, 241 P.3d 7, 12 (Idaho Ct. App. 2010) (relying on federal law interpreting 42 U.S.C. § 1997e(a)).

In the Ninth Circuit, a claim that a prisoner failed to exhaust administrative remedies is an affirmative defense that should be brought as an unenumerated motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2002). Defendants have the burden to plead and prove exhaustion, and the reviewing court may look beyond the pleadings to resolve disputed issues of fact, if necessary. *Id.*

## 2.     ICC's Grievance Process

Although it is a privately-run prison, ICC follows the same three-step administrative grievance procedure that the Idaho Department of Correction uses, which requires a prisoner to submit an informal concern form describing the problem, followed by the filing of a formal grievance, and an appeal of any adverse decision. (Dkt. 14-1, Second Affidavit of Chester Penn at ¶ 9.)

The prisoner begins this process by routing the concern form to the staff member most capable of addressing the problem. (Penn Aff., ¶ 12.) If the issue is not resolved, the prisoner must then complete a grievance form and file the grievance within 30 days of the incident. (*Id.* at ¶ 13.) The grievance form must contain specific information regarding the nature of the complaint, including the dates, places, names, and how the offender has

been adversely affected. (Id. at ¶ 14.) The "grievance coordinator" at the prison will route a properly completed grievance to the appropriate staff member, who must respond within 10 days. (*Id*.)

After the staff member responds, the grievance coordinator forwards the grievance to the "reviewing authority," usually the deputy warden, who reviews the prisoner's complaint and the staff member's response and issues a decision. (*Id*. at ¶ 14.) If the prisoner is dissatisfied with the reviewing authority's decision, he may then appeal within 5 days to the "appellate authority," which is usually the facility head. (*Id*. at ¶ 15.) Once the appellate authority has issued its decision, the grievance is then routed back to the inmate, thus concluding the administrative review process. (*Id*.)

## DISCUSSION

Defendants do not seek dismissal of Plaintiff's entire Complaint, and they concede that Plaintiff "arguably" exhausted a failure to protect claim "related to the August 10, 2010 inmate-on-inmate assault incident re: refusing to ensure that vulnerable prisoners were housed apart from violent prisoners." (Dkt. 14-1, p. 14.) Defendants instead contend that Plaintiff did not exhaust his administrative remedies as to (1) any claim arising from the March 10, 2010 assault, (2) any claim based on the failure to provide adequate medical care, and (3) any claim based on Plaintiff's examples of wider ICC patterns and practices that he contends show an institutional indifference to inmate safety. (Dkt. 1, pp. 4-5.)

In support, Defendants have offered evidence from Chester Penn, the grievance

coordinator at ICC. Penn has searched the grievance records at ICC and has provided an

affidavit. According to Penn, Plaintiff filed one grievance, logged on September 10, 2010,

in which he complained about the prison's failure to protect him from an assault:

> I was housed in A pod on 8-10-10 with a tier full of my know[n] enemys [sic], the
> doors were all rolled and I was attacked by several inmates in my cell. I was not
> protected by ICC.

2(Dkt. 14-1, p. 49.)

Dissatisfied with the response at the first and second levels of review, Plaintiff

appealed the disposition of the grievance to the appellate authority:

> Melodys response to my grievance was wrong on all points. 1. He said I've been
> on F-1 without incident when in fact I was just attacked in March by 2 of these
> guys. 2. I did not take part in the F-1 group disruption I was in A pod for
> investigation for a not found. 3. If you will review the tape you will see I was in
> my cell when it was over ran[,] I left only after I was being stomped on to escape[.]
> I ran down stairs.

(Dkt. 14-2, p. 50.) The Warden denied additional relief. (*Id.*)

According to Defendants, this was the only grievance that Plaintiff properly

completed regarding the 2010 inmate-on-inmate assaults.[2] The Court has little trouble in

concluding that Plaintiff exhausted a failure to protect claim related to the August 10

attack, and Defendants do no argue otherwise.

The Court further concludes that Plaintiff did not complete the established

grievance procedure as to any claim related to the March 10 assault, nor is there any

evidence before the Court that he filed a grievance raising complaints about ICC staff's

---

[2] Plaintiff later filed a second grievance, but it was returned to him without action because the
September 10 grievance had addressed the same concerns. (Dkt. 14-1, p. 51.)

failure to provide adequate post-assault medical care. In reaching this conclusion, the Court is not persuaded by Plaintiff's argument that he exhausted all claims through disciplinary offense proceedings, rather than the grievance procedure. To support that argument, Plaintiff has misplaced his reliance on Chief Judge Winmill's decision in *Riggs v. Valdez*, 2010 WL 4117085 (D. Idaho 2010).

Ordinarily, all conditions of confinement issues must be raised in grievances rather than through prison disciplinary proceedings. In *Riggs*, Judge Winmill allowed some prisoners to proceed with failure to protect claims that they had raised in the DOR appellate process, but only after finding that the grievance system was unavailable to those prisoners as a practical matter because: (1) certain prisoners had attempted to file grievances raising failure to protect claims but were told to proceed through the DOR process; (2) the failure to protect claims were so closely tied to the events that formed the basis of the DOR charges that the distinction between them was "exceedingly subtle"; (3) the prisoners were reasonably led to believe from the circumstances that the DOR process was the only forum in which they could raise all claims; and (4) the prisoners actually raised failure to protect issues in their DOR appeals. *Id*. at *8-10. On those facts, Judge Winmill concluded that the prisoners had sufficiently alerted officials to the nature of their claims through the only avenue of administrative relief that was effectively available to them, which was the DOR process. *Id*. at 11.

Unlike the prisoners in *Riggs*, there is no evidence in this record that Plaintiff received confusing or misleading advice from the grievance coordinator that led him to

believe that he must proceed with all related claims through the DOR process. More importantly, even under the unique circumstances in *Riggs*, only those plaintiffs that made a good faith effort to alert the prison of their failure to protect claims in their DOR appeals were allowed to go forward. Plaintiff has provided a copy of his completed DOR appeal form, and he did not raise failure to protect or medical issues in that appeal. He instead argued that he should not have been found guilty because he was attacked while he was outside of his cell. (Dkt. 16, p. 19.) Essentially, Plaintiff was contesting the factual basis for the DOR charge rather than complaining to prison officials that their failure to protect him from assault or from offering him adequate post-assault medical care. For these reasons, *Riggs* affords him no relief.[3]

The only remaining issue is whether Plaintiff was also required to exhaust each factual allegation of ICC's supposedly wider policy and practice failures that he has listed in the "General Allegations" section of his Complaint. These instances are recounted by the Defendants as the following:

> (1) [a] failure to adequately train ICC staff to avoid assaults, (2) failure to have a sufficient number of correctional officers posted in Chow Hall, (3) failure to discipline ICC employees who contributed to the assault, (4) failure to punish prisoners who committed assaults, (5) failure to refer assaults for prosecution, (6) failure to adequately investigate assaults, (7) ICC staff ignoring prisoner safety, (8) that CCA's in-house medical unit purposefully conceals the incidence and extent of inmate injuries suffered as a result of the facility's recurrent violence; through official medical unit policies, such as the omission of any x-rays of severe assault injuries.

---

[3] If anything, Plaintiff's situation is more analogous to the one plaintiff in *Riggs*, Rocha, who was not allowed to go forward because Rocha "did not make a good faith effort [in his DOR appeal] to alert prison officials to the facts comprising any current claim." *Id.* at *11.

(Dkt. 14-1, pp. 5-6.) Defendants characterize these allegations as "claims" that were not raised in grievances and must now be dismissed. (*Id*.) In contrast, Plaintiff responds that these are merely "factual indicia" supporting his claims for relief and "are not themselves claims for which administrative remedies must be exhausted." (Dkt. 16, p. 4.) The Court is persuaded that Plaintiff has the better argument.

Chief Magistrate Judge Candy W. Dale addressed this issue recently in a related case with similar claims, *Spaude v. Corrections Corporation of America*, *Inc.*, *et al.*, 1:10-cv-00551-CWD, and concluded that the plaintiff there was not required to exhaust each background allegation separately:

> To exhaust administrative remedies properly, a prisoner is not required to include every factual circumstance or an offer of evidentiary proof in a grievance that might later support a complete cause of action in a complaint, nor is he required to articulate legal theories. To be sure, if a prisoner seeks relief based on facts or theories that are too far afield from the subject matter that was brought before prison officials, then the prisoner cannot be said to have exhausted his remedies before raising those claims. Here, however, Plaintiff's grievances "provide[d] enough information ... to allow prison officials to take appropriate responsive measures." *Griffin* [*v. Arpaio*], 557 F.3d [1117], 1121 (quoting *Johnson v. Testman*, 80 F.3d 691, 697 (2d. Cir. 2004). If more systemic failures existed at the prison, a thorough investigation by officials into the issues that Plaintiff brought to their attention would have presumably uncovered them.

(*Id*. at Dkt. 29, p. 7.)

The Court finds that analysis to be sound. As in *Spaude*, Plaintiff asserts here that he is not seeking relief as to the "factual indicia" that he has listed in his Complaint. Moreover, his grievance as to the August 10 assault alerted prison officials that they had failed to protect him from harm. That was the problem as he perceived it from his vantage

point, and to the extent that a broader pattern and practice of administrative failures may have fostered the environment that led to the harm, as Plaintiff now alleges, an investigation by ICC officials into his grievance should have reasonably uncovered them.

Based on the forgoing, Defendants' Amended Motion to Dismiss will be granted in part and denied in part. The "medical claims" alleged in Counts III and IV in the Complaint will be dismissed based on a failure to exhaust administrative remedies as to those claims. The "failure to protect" claims grounded in Counts I, II, and V, will not be dismissed, but they are limited to claims for relief based on August 10, 2010, assault and the circumstances that Plaintiff alleges led to that assault.

## ORDER

**IT IS ORDERED:**

1. Defendants' Motion for Leave to Amend CCA Defendants' Motion to Dismiss (Dkt. 14) is GRANTED. The Amended Motion to Dismiss is deemed filed as of May 16, 2011. (Dkt. 14-1; Exhibit A.)

2. CCA Defendants' Amended Motion to Dismiss (Dkt. 14-1) is GRANTED in part and DENIED in part. Counts III and IV are DISMISSED from the Complaint, without prejudice, based on a failure to exhaust administrative remedies.

3. Defendants' Motion to Dismiss (Dkt. 9) is DEEMED MOOT.

4. The parties shall adhere to the following schedule for all pretrial matters:

5. **<u>Completion of Factual Discovery</u>:** All factual discovery shall be completed on or before **July 13, 2012.** Discovery requests must be made far enough in advance to

allow *completion* of the discovery in accordance with the applicable federal rules *prior* to this discovery cut-off date. The Court is not involved in discovery unless the parties are unable to work out their differences between themselves as to whether the discovery responses are appropriate.

6.    **Expert Witness Disclosures**: The Plaintiff shall make expert witness disclosures, and provide copies of expert reports, pursuant to Rule 26.2(b) of the Local Rules for the District of Idaho, on or before **August 17, 2012.** Defendants shall make expert witness disclosures, and provide copies of expert witness reports, pursuant to Rule 26.2(b) of the Local Rules for the District of Idaho, on or before **September 17, 2012.** The Plaintiff shall make any rebuttal expert witness disclosures and provide copies of any rebuttal expert reports, pursuant to Rule 26.2(b) of the Local Rules for the District of Idaho on or before **October 17, 2012.** All expert discovery shall be completed on or before **November 26, 2012.**

7.    **Dispositive Motions:** All motions for summary judgment and other potentially dispositive motions shall be filed with accompanying briefs on or before **November 26, 2012.**

8.    **Alternative Dispute Resolution (ADR)**. Should Plaintiff and any Defendant wish to attend a settlement conference, they should contact Susie Boring-Headlee, the Court's ADR Coordinator, at 208-334-9067.



DATED: **March 8, 2012**

~~Honorable~~ Edward J. Lodge
U. S. District Judge